IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PLEXICOAT AMERICA, LLC,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | **CIVIL ACTION NO.:** |
| : | **2:13-CV-3887-CDJ** |
| **PPG ARCHITECTURAL** : | |
| **FINISHES, INC.,** : | |
| : | |
| **Defendant.** : | |

## MEMORANDUM

**Judge C. Darnell Jones, II**                                                                 **March 21, 2014**

The Court holds that Plaintiff Plexicoat America LLC may proceed with Count I on the claim that Defendant PPG Architectural Finishes' employee, Mr. Hartings, falsely and fraudulently induced Plaintiff into the Agreement in dispute by representing that he "possessed the authority to execute the Agreement on behalf of Defendant and, accordingly, was authorized to carry out the terms and conditions of the agreement as of the Effective Date of the Agreement." (Compl. ¶¶ 78, 80.) Plaintiff's other claims under Count I are dismissed under the gist of the action doctrine.

## I.     Background

Plaintiff, Plexicoat America LLC, filed suit against Defendant, PPG Architectural Finishes, Inc., for breach of contract and fraud in the inducement relating to a 2011 Reseller Agreement ("the Agreement") between the two companies. Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant has moved for dismissal of Plaintiff's fraud in the inducement claims in Count I of the Complaint.

Plaintiff alleges that "[a]t all material times prior to the execution of the Agreement, Defendant, by and through [Defendant's employee] Mr. Hartings," (1) "represented that it was ready, willing and able to comply with the terms and conditions set forth in the Agreement as of

the Effective Date of the Agreement," (Compl. ¶ 77.); (2) "[Mr. Hartings] represented that he possessed the authority to execute the Agreement on behalf of Defendant and, accordingly, was authorized to carry out the terms and conditions of the agreement as of the Effective Date of the Agreement," (Compl. ¶ 78.); and (3) "represented that Defendant would utilize its national sales and marketing team and programs to promote, market and advertise the sale of Plaintiff's products as of the Effective Date of the Agreement." (Compl. ¶ 79.) Plaintiff alleges that these representations were material to Plaintiff's consideration of the Agreement, (Compl. ¶ 93), were false and fraudulent, (Compl. ¶ 80), were made with knowledge of the falsity, (Compl. ¶ 94), were made recklessly, (Compl. ¶ 95), were made with the intent of inducing Plaintiff to execute the Agreement, (Compl. ¶ 96), and were made with the intent of inducing Plaintiff to execute an exclusive re-seller agreement. (Compl. ¶ 97.)

## II. Discussion

### a. Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly,* 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant

has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside,* 578 F.3d 203, 210–11 (3d Cir. 2009) ("All civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation omitted).

### b. Gist of the Action Doctrine

The gist of the action doctrine bars tort claims arising solely from a contract between the parties.[1] *Galdieri v. Monsanto Co.*, 245 F. Supp. 2d 636, 650 (E.D. Pa. 2002). The gist of the action doctrine "requires the court to determine from the complaint the essential nature of the claim alleged by distinguishing between contract and tort claims on the basis of source of the duties allegedly breached; if the claim essentially alleges a breach of duties that flow from an agreement between the parties, the claim is contractual in nature, whereas if the duties allegedly breached were of a type imposed on members of society as a matter of social policy, the claim is essentially tort-based." *Caudill Seed & Warehouse Co., Inc. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 833 (E.D. Pa. 2000) (citing *Phico Ins. Co. v. Presbyterian Med. Servs. Corp.,* 444 Pa. Super. 221, 663 A.2d 753, 757 (1995)); *see also The Knit With v. Knitting Fever, Inc.*, 2009 WL 3427054, at *5 (E.D. Pa. 2009) (citing *eToll, Inc. v. Elias/Savion Adver., Inc.,* 2002 Pa. Super.

---

[1] The gist of the action defense is governed by the substantive law of Pennsylvania. *See Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.,* 602 F.3d 541, 548 (3d Cir. 2010). The Supreme Court of Pennsylvania has not expressly adopted the gist of the action doctrine, however Pennsylvania Superior and Common Pleas courts have "operated under the assumption that the gist of the action doctrine is a viable doctrine that will eventually be explicitly adopted by [the] state's High Court." *Reardon v. Allegheny Coll.,* 2007 Pa. Super. 160, 926 A.2d 477, 486 (2007); *see also Clemente v. Republic First Bank*, December Term 2002, No. 00802, 2003 Phila. Ct. Com. Pl. LEXIS 23 (C.C.P. Phila. May 9, 2003) (Jones, J.).
   The Court follows the weight of authority in our Circuit and predicts that the Pennsylvania Supreme Court will adopt the gist of the action doctrine. *See Vives v. Rodriguez,* 849 F. Supp. 2d 507, 520 (E.D. Pa. 2012) (providing an extensive, instructive summary of the history of the gist of the action doctrine in our Circuit and in the Pennsylvania state courts); *see also Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc.,* 247 F.3d 79, 103 (3d Cir. 2001) (predicting acceptance of the gist of the action doctrine); *Oldcastle Precast, Inc. v. VPMC, Ltd.*, 2013 WL 1952090, at *10 (E.D. Pa. 2013) (same); *Werner Kammann Maschinenfabrik, GmbH v. Max Levy Autograph, Inc.*, 2002 WL 126634, at *6 (E.D. Pa. 2002) (same); *Caudill Seed & Warehouse Co., Inc.*, 123 F. Supp. 2d 826, 833 note 11 (E.D. Pa. 2000) (same).

347, 811 A.2d 10, 19 (2002) (internal quotation marks and citations omitted)); *Bash v. Bell Tel. Co.,* 411 Pa. Super. 347, 601 A.2d 825 (1992).

The Court will determine "whether the 'gist' or gravamen of [the Complaint] sounds in contract or tort; a tort claim is maintainable only if the contract is 'collateral' to conduct that is primarily tortious." *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999); *see also eToll, Inc.,* 811 A.2d at 14 ("The doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims."). "The test is not limited to discrete incidents of conduct; rather, the test is, by its own terms, concerned with the nature of the action as a whole." *Am. Guarantee & Liab. Ins. Co. v. Fojanini*, 90 F. Supp. 2d 615, 622 (E.D. Pa. 2000).

The issue before the Court is whether or not Plaintiff is properly alleging that the fraud was in the "inducement of the contract," rather than in the breach of the contract. *See e.g.*, *Foster v. Northwestern Mutual Life,* 2002 WL 31991114, at *3 (E.D. Pa. 2002) (holding that a showing that the fraud was in the *inducement* of the contract would implicate the "'larger social policies' of a tort action (e.g., society's desire to avoid fraudulent inducement in the employment context), and would justify extending this case beyond the contractual allegations"); *Mendelsohn, Drucker & Associates v. Titan Atlas Mfg., Inc.*, 885 F. Supp. 2d 767, 790 (E.D. Pa. 2012) (denying dismissal because Plaintiff adequately pled that Defendant's action constituted "a breach of duties of honesty imposed by society, not contractual duties contained in the [contract]"); *see also Pennsylvania Business Bank v. Franklin Career Servs. LLC*, May Term 2002, No. 2507, 2005 Phila. Ct. Com. Pl. LEXIS 135, at *3 note 2 (C.C.P. Phila. March 14, 2005) (Jones, J.) ("The gist of the action doctrine does not preclude a party from bringing claims for fraud in the inducement of a contract alongside breach of contract claims, so long as the two claims arise out of two different wrongful acts.").

Where the allegedly fraudulent, pre-contractual statements concern specific duties later outlined in the contract, the gist of the action doctrine may apply. *See, e.g.*, *Williams v. Hilton Grp. PLC*, 93 F. App'x 384, 386 (3d Cir. 2004) (dismissing Plaintiff's fraudulent inducement claim because the statements forming the basis of such claims were specifically outlined in the contract); *Vives v. Rodriguez*, 849 F. Supp. 2d 507, 521 (E.D. Pa. 2012) (dismissing because the misrepresentations as to Defendant's duties were later enshrined in the contract); *Integrated Waste Solutions, Inc. v. Goverdhanam*, 2010 WL 4910176, at *13 (E.D. Pa. 2010) (dismissing because "Plaintiff's breach of contract, fraud, and misrepresentation claims all relate[d] to Defendant[]'s alleged failure to comply with the terms specifically outlined" in the contract); *Galdieri v. Monsanto Co.,* 245 F. Supp. 2d 636, 650-51 (E.D. Pa. 2002) (granting Defendants' motion for summary judgment on Plaintiffs' misrepresentation claim because "[e]ach [misrepresentation] allegation addresse[d] a breach of duty incorporated into the parties' various agreements" and was thus "'intertwined' with Plaintiff's breach of contract claim"); *Werner Kammann Maschinenfabrik, GmbH v. Max Levy Autograph, Inc.*, CIV.A. 01-1083, 2002 WL 126634, at *6-7 (E.D. Pa. 2002) (dismissing and holding that Plaintiff's misrepresentation claim was "completely intertwined with" the contract claims because the alleged misrepresentation was included as an "express statement" in the contract); *Caudill Seed & Warehouse Co., Inc. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 833-34 (E.D. Pa. 2000) (dismissing and holding that the "heart of plaintiff's ongoing fraud claim" was the allegation that on multiple occasions during the duration of the contract, Defendants promised to, but then failed to, fulfill the contract).

In contrast, the Court will deny the motion to dismiss if it determines that Plaintiff has plausibly pled that the allegedly fraudulent, pre-contractual statements were outside the scope of the eventual contract. *See, e.g.*, *Pediatrix*, 602 F.3d at 550 (remanding for a new trial because continued issue of fact persisted as to whether "the misrepresentation was inextricably intertwined

with the parties' actions in carrying out the collaboration efforts" or was "properly grounded on actions outside the scope of the agreement"); *Dunkin' Donuts Franchised Restaurants, LLC v. Claudia I, LLC*, 2013 WL 3716525, at *7 (E.D. Pa. 2013) (denying dismissal because the contractual relationship of the parties was in dispute); *ClinMicro Immunology Ctr., LLC v. PrimeMed, P.C.*, 2013 WL 3776264, at *6 (M.D. Pa. 2013) (denying dismissal because it was "not evident" whether the alleged concealment was intertwined with Defendant's obligations under the relevant agreements); *De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP*, 2009 WL 564627, at *7 (E.D. Pa. 2009) (declining to dismiss Plaintiff's fraudulent inducement claim because the allegedly misleading statements did "not necessarily regard duties later outlined in the contract"); *Foster*, 2002 WL 31991114, at *3 (allowing parties to proceed to discovery to determine whether Plaintiff could show that he was induced to contract based on misrepresentations outside of the scope of the contract).

  To determine whether Plaintiff has plausibly pled a distinct claim for fraudulent inducement, courts have analyzed whether the allegedly fraudulent representations of Defendant reflected promises of subjective versus objective qualifications. Where Defendants' representations reflected promises of *subjective* capacity, the case may sound in contract. *See Tier1 Innovation, LLC v. Expert Tech. Grp., LP*, CIV.A. 06-CV-04622, 2007 WL 1377664 (E.D. Pa. 2007) (finding that representations regarding subjective qualifications, "including a party's own belief as to its expertise and ability to perform, relate to the failure to perform under the contract between the parties"); *KSM Associates, Inc. v. ACS State Healthcare, LLC*, CIV.A. 05-4118, 2006 WL 847786, at *4 (E.D. Pa. 2006) (dismissing under the gist of the action doctrine where alleged misrepresentation concerned the Defendant's "own belief as to its expertise and competence"). In contrast, where Defendant's representations misrepresented Defendant's *objective* qualifications to carry out the contract, the case may sound in tort. *See e.g.*, *Air Products*

5

*& Chemicals, Inc. v. Eaton Metal Products Co.*, 256 F. Supp. 2d 329, 342-43 (E.D. Pa. 2003) (holding that Plaintiff's claims alleged a violation of social policy and sounded in tort because Defendant employee misrepresented the *objective* qualification that he was certified by the American Society of Mechanical Engineers).

In this case, the Court construes the Complaint as alleging three claims in Count I for Fraud in the Inducement: (1) Defendant represented that it was "ready, willing and able to comply with the terms and conditions set forth in the Agreement as of the Effective Date of the Agreement," (Compl. ¶ 77.); (2) "[Mr. Hartings] represented that he possessed the authority to execute the Agreement on behalf of Defendant and, accordingly, was authorized to carry out the terms and conditions of the agreement as of the Effective Date of the Agreement," (Compl. ¶ 78.); and (3) "[Mr. Hartings] represented that Defendant would utilize its national sales and marketing team and programs to promote, market and advertise the sale of Plaintiff's products as of the Effective Date of the Agreement." (Compl. ¶ 79.) Plaintiff contends that these three representations were false and fraudulent. (Compl. ¶ 80.)

The first and third claims are clearly enshrined in the Agreement. (Ex. A.) In § 5.2 and again in § 11.2, Defendants agreed to "use commercially reasonable effort" to promote and sell the Products and generate a minimum amount of sales over the three years of the Agreement. (Ex. A.) As such, these claims are barred by the gist of the action doctrine.

Plaintiff's second claim is a closer call. It is thus appropriate to exercise caution in dismissing it at this stage. *See e.g.*, *The Knit With*, 2009 WL 3427054, at *7 ("[C]ourts in this district have shown some reluctance to dismiss claims for fraud in the inducement and negligent misrepresentation early in the litigation"). Plaintiff alleges that it was induced into the Agreement because Mr. Hartings fraudulently represented that he was "authorized to carry out the terms and

conditions" of the Agreement. (Compl. ¶ 78.) At this early stage, the Court believes Plaintiff has stated a plausible claim, one which discovery may further elucidate.

Plaintiff has sufficiently pled that Mr. Hartings's promises reflected fraudulent representations of Defendant's objective qualifications. Taking the facts in the light most favorable to Plaintiff, (1) as of the Effective Date of the Agreement, Mr. Hartings did not possess the authority to commit Defendant to the minimum Net Sales of Plaintiff's products set forth in the Agreement, (Compl. ¶ 84); (2) Mr. Hartings was not authorized to issue a purchase order in excess of $100,000, (Compl. ¶ 85); (3) Defendant was not "prepared" to have any employee issue the requisite purchase order (Compl. ¶ 86); and (4) Mr. Hartings failed to apprise relevant superiors of the Agreement. (Compl. ¶¶ 87-91.) Moreover, the complaint demonstrates that Mr. Hartings failed to "discuss, disclose or receive approval" for the Agreement from Defendant prior to committing the company to the Agreement, (Compl. ¶ 92), instead purporting to sign on its behalf. (Ex. A.) At this early stage, the second claim of Count I alleges sufficient facts to withstand a motion to dismiss.

**BY THE COURT:**

**/s/ C. Darnell Jones, II, J.**

**C. DARNELL JONES, II, J.**