**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PLEXICOAT AMERICA LLC,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 13-cv-3887 |
| | : | |
| **PPG ARCHITECTURAL FINISHES, INC.,** | : | |
| Defendant. | : | |

**MEMORANDUM**

**LYNNE A. SITARSKI**                                                          **DATE: January 13, 2015**
**UNITED STATES MAGISTRATE JUDGE**

Presently before the Court is Defendant's Motion to Compel (ECF No. 25), seeking to compel Plaintiff to provide full and complete responses to previously served discovery requests. Upon review of Defendant's motion and Plaintiff's opposition thereto (ECF No. 28), Defendant's motion to Compel will be **GRANTED IN PART** and **DENIED IN PART**.[1]

**I.      BACKGROUND**

This is a diversity breach of contract action brought by Plexicoat America, LLC ("Plaintiff"), against PPG Architectural Finishes, LLC ("Defendant"). Plaintiff and Defendant entered into a Reseller Agreement ("the Agreement") in March of 2011. (Compl. ¶ 8). The Agreement named Defendant the exclusive reseller of Plaintiff's decorative and industrial protective floor coatings (the "Plexicoat products") and obligated Defendant to use "commercially reasonable efforts" to promote and sell said products to generate certain

---

[1] Pursuant to 28 U.S.C. § 636(b)(1)(A), and by Order dated November 4, 2014 (ECF No. 26), the Honorable C. Darnell Jones referred this discovery dispute to the undersigned for resolution.

minimum sales figures.[2] (Compl. ¶ 10). The Agreement provided for a three year term, and gave both parties the right to terminate upon 180 days notice. (*Id.*). In December 2012, Defendant provided Plaintiff with notice of termination, and the Agreement ended in June of 2013.

According to Plaintiff, in the months following the effective date of the Agreement, Defendant made "no commercially reasonable efforts to meet the minimum sales figures." (Compl. ¶ 10). Specifically, Plaintiff contends that Defendant failed to prepare administratively to sell the Plexicoat products, deliver a sales plan, issue an initial purchase order, advertise the product, or give its sales personnel appropriate notice and training to sell the Plexicoat products. (*See id*. ¶¶ 24-28, 30-31, 45-46, 53-54, 105). Additionally, Plaintiff contends that it was induced to enter the Agreement based on the false and materially misleading representations of an employee of Defendant. (*Id.* ¶¶ 94-96). Plaintiff thus brought suit on July 3, 2013, asserting claims of fraud in the inducement (Count I) and breach of contract (Count II).[3] (Compl. ¶¶ 5, 76-99, 100-106).

Discovery in this matter was initially ordered to be completed by November 21, 2014.

---

[2] Specifically, under a provision entitled "MINIMUM SALES REQUIREMENTS BY PPG," the Agreement provides that Defendant "shall" use commercially reasonable efforts to generate minimum net sales of the Plexicoat products in the following amounts: $750,000 in year one; $1.5 million in year two; and $2.5 million in year three. (*See* ECF No. 1-1 at ¶11.2).

[3] By order dated March 21, 2014, the Court granted in part Defendant's Motion to Dismiss Count I, but allowed Plaintiff continue on the fraud in the inducement theory as it pertained to a particular employee, who allegedly induced Plaintiff to enter into the Agreement by representing that he was authorized to carry out its terms and conditions. (ECF No. 16 at 6-7). On December 29, 2014, Plaintiff moved for leave to amend the Complaint to include newly-discovered information relating to Plaintiff's claim for fraud in the inducement. (ECF No. 31). That motion is currently pending.

(Order, ECF No. 22).  The discovery period was subsequently extended through February 27, 2015.  (Order, ECF No. 27).  On or about July 14, 2014, Plaintiff provided written responses and objections to Defendant's First Set of Written Interrogatories, Defendant's Requests for Documents, and to Defendant's Request for Admissions.  (ECF No. 25 Exs. A, B).  Plaintiff also produced documents.  (ECF No. 25, Ex. C).  On July 31, 2014, the parties conferred via telephone to address alleged deficiencies in Plaintiff's submissions.  (*Id*.).  Thereafter, Defendant followed up by letter dated August 4, 2014, because Defendant continued to assert that Plaintiff had not fully responded to certain discovery requests.  (*Id*.).  Plaintiff submitted supplemental responses and objections on August 21, 2014.  (ECF No. 25, Ex. D at 94).  Defendant thereafter moved to compel Plaintiff to submit a Supplemental Answer to Interrogatory 5 and Supplemental Responses to Requests for Production of Documents 8, 9, 12, and 24.  (ECF No. 25 at 4-7).

**II.     DISCUSSION**

    **A.     Legal Standards**

"It is well established that the scope and conduct of discovery are within the sound discretion of the trial court."  *Marroquin–Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983).  Pursuant to Federal Rule of Civil Procedure 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Relevant information sought in discovery need not be admissible at trial, as long as it "appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*  Relevance is generally "construed broadly to encompass any matter that could bear on, or that reasonably

could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Funds v. Sanders*, 437 U.S. 340, 351 (1978).

While generally liberal, permissible discovery is not without limitations. Discovery should not serve as a fishing expedition. *Upshaw v. Janssen Research & Development, LLC*, No. 11-7574, 2014 WL 1244047, at * 3 (E.D. Pa. Mar. 26, 2014); *see also Claude P. Bamberger Int'l v. Rohm & Haas Co.*, No. 96–1041, 1998 U.S. Dist. LEXIS 11141, at *5–6 (D.N.J. Mar. 31, 1998) ("While the standard of relevancy is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not appear germane merely on the theory that it might become so.") (*quoting In re Fontaine*, 402 F.Supp. 1219, 1221 (E.D.N.Y. 1975)).

Pursuant to Rule 37, a party who has received evasive or incomplete answers to discovery requests may move for an order compelling discovery. *See* Fed. R. Civ. P. 37(a)(1), (4). The moving party bears the initial burden of showing that the requested discovery is relevant. *Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). The burden then shifts to the party opposing discovery to articulate why discovery should be withheld. *Id.* The party resisting production must demonstrate to the court "that the requested documents either do not come within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Young v. Lukens Steel Co.*, No. 92-6490, 1004 WL 45156, at *2 (E.D. Pa. Feb. 10, 1994) (quotations and citation omitted).

    **B.**    **Defendant's Motion to Compel**

        **1.**    **Requests Relating to Plaintiff's Market Share Prior to Agreement**

Defendant's Interrogatory Number 5 and Request for Production of Documents Number 12 both seek information relating to Plaintiff's sales figures for the Plexicoat products in the three years prior to the effective date of the Agreement.[4]  Defendant argues that the historical sales information will be used by Defendant's liability expert as it is relevant to the "reasonableness of Defendant's sales efforts."[5]  (ECF No. 25 at 4-5, 7).  Plaintiff responds that under the Agreement's "commercially reasonable efforts" standard, Plaintiff's historical sales information is irrelevant to the issue of Defendant's performance.  (ECF No. 28 at 4).

The term "commercially reasonable efforts" is not defined by the Agreement, (*see* ECF No. 1-1), nor is it the default standard under Pennsylvania contract law.  Rather, Pennsylvania

---

[4] Interrogatory 5 requests:

> For each of the "Plexicoat products," set forth the following information: when Plexicoat first offered each such product for sale; and all sales of each such product between January 1, 2008 and March 9, 2011, including: the names and addresses of all persons and entities to whom the product was sold and the name, address and employer of the person or entity who sold it; the date of each such sale and the amount of the product sold to each said person or entity; and the selling price and profit made on each such sale.

(Def.'s Ex. A at 12, ECF No. 25).   Request for Production of Documents No. 12 seeks:

> All bids, proposals, specifications, purchase orders, invoices, bills of lading, receipts, records, statements, order tracking reports and other documents reflecting, referring to, or relating to, any and all sales of the each of the "Plexicoat products" between January 1, 2008 and March 9, 2011.

(Def.'s Ex. B at 10, ECF No. 25).

[5] Defendant also argues that this information is relevant to rebutting Plaintiff's ability to establish damages, an element of its prima facie case for breach of contract.  (ECF No. 25 at 4). Because the Court finds this material relevant on other grounds, I do not address this argument.

law provides that where there is an exclusive sales contract, there is an obligation on the buyer/reseller of goods—here, the Defendant—to "use *best efforts* to promote their sale" absent a countervailing agreement by the parties. 13 Pa. Cons. Stat. Ann. § 2306 (West) (emphasis added). The "best efforts" obligation is greater than the good faith requirement implied in all contracts, as it requires a party to make such efforts as are reasonable in light of the party's ability, the means at its disposal, and the other party's justifiable expectations. *See Nat'l Data Payment Sys. v. Meridian Bank*, 212 F.3d 849, 854 (3d Cir. 2000) (explaining that "best efforts" is more "exacting" than good faith as it requires additional diligence on the part of the promisor); *Allegheny Valley R. Co. v. Urban Redevelopment Auth. of City of Pittsburgh*, No. 1111 C.D. 2013, 2014 WL 2938616, at *6 (Pa. Commw. Ct. June 27, 2014).

Courts have not offered a clear definition of what constitutes "commercially reasonable efforts," or the extent to which such clauses may differ from the default "best efforts" standard. *See, e.g.*, *In re Am. Home Mortg. Holdings, Inc.*, 637 F.3d 246, 259 (3d Cir. 2011) ("[T]he determination of what is 'commercially reasonable' involves a fact-intensive inquiry, dependant of the totality of the circumstances, and calls for an examination of the particular situation . . .."); *Samson Lift Techs., LLC v. Jerr-Dan Corp.*, 2011 U.S. Dist. LEXIS 89278, at *12 (M.D. Pa. Aug. 11, 2011) (holding that the term "reasonable commercial efforts" is an ambiguous term open to multiple interpretations and is, therefore, a factual determination best left for a jury to decide); *Citri-Lite Co. v. Cott Bevs., Inc.*, 721 F. Supp. 2d 912, 925, 2010 U.S. Dist. LEXIS 58441, at *32-36 (E.D. Cal. 2010) (reviewing case law and concluding there is no settled or universally accepted definition of the term "commercially reasonable efforts," but it generally permits the performing party to consider its own economic business interests). However, as a

general proposition "the determination of reasonableness is a factual one, requiring consideration of all the facts and circumstances." *Victaulic v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (*quoting WellSpan Health v. Bayliss*, 869 A.2d 990, 999 (Pa. Super. Ct. 2005)).

It is beyond the scope of the present discovery dispute for the Court to define the contours of Defendant's obligation under Agreement. However, the Court agrees with Defendant that Plaintiff's sales figures prior to the effective date of the Agreement are broadly relevant to its defense against the breach of contract claim. Since the "commercially reasonable efforts" standard under which Plaintiff alleges breach will call for fact-specific consideration of the environment in which Defendant was acting, not merely Defendant's objective actions, Plaintiff's historical sales figures could be relevant to the defense that Defendant acted in a commercially reasonable manner.[6] Accordingly, Plaintiff is ordered to produce a supplemental response to Interrogatory Number 5 and to produce documents responsive to Request for Documents Number 12.

## 2. Plaintiff's Financial Records from 2009 to Present

Request for Production of Documents Number 8 asks for "[a]ll of [Plaintiff's] financial statements, and all of the tax returns filed by [Plaintiff] from 2009 to the present." (Def.'s Ex. B at 8). Defendant argues that this information is relevant to defending against Plaintiff's damages

---

[6] Plaintiff contends that entered into the Agreement to leverage Defendant's sales force and industry presence specifically because it was less able to sell the Plexicoat products on its own. (Pl.'s Resp. at 4). It is true that Plaintiff's historical success at selling the Plexicoat products *may* have very little bearing on what was commercially reasonable conduct for Defendant given its different market position and extensive sales force. However, this information is nonetheless relevant because it may provide a baseline measurement, or a basis for deriving a baseline measurement, to which Defendant's results might be compared. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978) (setting forth broad definition of relevance).

claim, among other issues. (*Id*.). Plaintiff responds that its pre-March 2011 financial statements and tax returns are not relevant to damages, because "[w]ithout regard to the enforceability of Section 9.2 of the Agreement ("Limitation of Liability"),[7] the direct damages of Plaintiff refer to those damages that Plaintiff lost from the Agreement itself, e.g. the benefit of the bargain." (ECF No. 28 at 5).

The question of the substantive contract law governing the calculation of damages is beyond the scope of this discovery dispute. At this early phase of the litigation, neither party has established the methodology that it will use to calculate damages, but Defendant intimates that both sides may require experts. (ECF No. 25 at 8). Because we do not currently decide whether Plaintiffs will be able to rely on "benefit of the bargain theory," based both on the terms of their contract and as a matter of substantive law, *see generally Tigg Corp. v. Dow Corning Corp.*, 962 F.2d 1119, 1129-31 (explaining, in a case applying Michigan contract law as it incorporates the Uniform Commercial Code, various damages calculations in exclusive sales contracts where repudiation is alleged), Plaintiff's financial status prior to entering the Agreement is broadly relevant to Defendant's ability to defend against Plaintiff's damages claim. Accordingly, Plaintiff is required to produce its accounting and financial agreements in accordance with

---

[7] Clause 9.2 of the Agreement reads, in part:

> Under no circumstances will either party be liable to the other in connection with the subject matter of the agreement under any contract, strict liability, negligence, or other legal or equitable theory, for (A) any indirect special or consequential damages; (B) lost profits or data; or (C) any amounts in excess of the cost of the products that are the subject of the claim.

(ECF No. 1-1 at ¶ 9.2).

Request for Production Number Eight.

### 3. Plaintiff's Accounting Records from 2008 to Present

Next, Defendant asks the Court to compel a supplemental response to Request for Production of Documents Number 9, which seeks Plaintiff's accounting and financial records "to establish Plaintiff's profit margin on any and all sales of 'Plexicoat products'" from 2008 to present, "including documents sufficient to establish Plaintiff's costs of acquisition, production and sale and total return on sales of each product." (Def.'s Ex. B at 9). Relatedly, Defendant asks the Court to compel Plaintiff to produce documents responsive to Request for Production Number 24, which asks for materials reflecting Plaintiff's purchase of the Plexicoat products or their component parts from any manufacturers, suppliers, or distributors. (ECF Number 25 at 7).

With respect to Request Number 9, Defendant argues that information related to Plaintiff's profit margins is "directly relevant to the claims and defenses in this case and is essential to an analysis of the claims in this case." (Def.'s Mot. at 6). In support of this argument, Defendant cites to the relevance argument set forth for Request for Production Number 12 and Interrogatory Number 5, reviewed above. (*See id*). However, while historical sales information could conceivably go to establishing a market baseline, by which Defendant can establish the reasonableness of its sales efforts as a defense, the same does not necessarily follow for Plaintiff's margins. Simply put, Defendant has made no showing that information pertaining to Plaintiff's profit margins will help it establish that it acted in a commercially reasonable manner. To the extent Plaintiff's profit margins are relevant to damages, Defendant will generally obtain this information through Plaintiff's providing financial statements in

response to Request for Production Number 8.  Accordingly, the Court denies Defendant's motion to compel a response to Request for Documents Number 9.[8]

Request for Documents Number 24 seeks documents regarding Plaintiff's *purchase* cost of the Plexicoat product and their component parts since January 1, 2008.  Defendant contends that this "cost of acquisition" information is relevant to allow Defendant to "fully evaluate Plaintiff's damages claim or to assess Plaintiff's expert damages calculation."  (ECF No. 25 at 8). Defendant does not explain how the amounts that Plaintiff spent acquiring the materials to produce the Plexicoat products prior to the Agreement date could help Defendant rebut Plaintiff's damages claim.  In any event, the Court notes that Defendant will obtain general information regarding Plaintiff's costs through the provision of its financial statements in response to Request for Production Number 8.  Accordingly, Defendant's motion to compel a supplemental response to Request for Production of Documents Number 24 is denied.

---

[8] The parties have indicated that Plaintiff has already produced some responsive documents to Request Number 9 dating from after the Agreement effective date. (*See* Pl.'s Resp. at 5-6).  Defendant now specifically asks the Court to order Plaintiff to produce purchase orders "reflecting Plaintiff's cost of acquisition of the products after March 10, 2011."  (Def.'s Mot. at 6).  Absent a more particularized showing from Defendant as to why the profit-margin information is relevant, as is its burden under Federal Rule of Civil Procedure 37, the Court declines to order Plaintiff to produce those orders or any other information in response to Request for Production Number 9.

**III.    CONCLUSION**

For the reasons set forth above, Defendant's Motion to Compel will be GRANTED with respect to the request Interrogatory Number 5 and Request for Production of Documents Numbers 8 and 12, and DENIED in all other respects.  An appropriate order follows.


BY THE COURT:


  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE